BEFORE THE FIRST DIVISION, MAY 28, 1962

No. 66795.—Richard S. Reade v. United States, protest 60/23208 (New York).

WILSON, Judge: The merchandise in the case at bar, invoiced as "Fish Liver Oil," was classified for duty under paragraph 5 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 10½ per centum ad valorem as "medicinal preparations," not specially provided for. Plaintiff claims the merchandise in question properly classifiable under paragraph 34 of the said act, as modified, supra, at the rate of 4 per centum ad valorem as "Drugs of animal origin, natural and uncompounded and not edible, and not specially provided for, but which are advanced in value or condition * * *, and not containing alcohol: * * * fish-liver oils." The merchandise here involved was imported on September 12, 1958.

This case was formerly reported in Abstract 65521, initial No. 60/23207.

At the hearing, Government counsel took the position that the protest was insufficient under the statute, in that it did not properly set forth plaintiff's claim, and moved for dismissal of the protest on that ground. However, since the Government does not press this contention too vigorously in its brief, and the court prefers to dispose of the case on its merits, the motion is overruled, and the matter herein will be treated as a protest made in a proper manner.

There is no substantial conflict in the evidence. The importation, it was conceded, was derived from some sort of fish oil, the type of fish from which the oil originally came not being identified, however, in the record.

The starting material, natural fish oil, was saponified by mixing it with caustic soda. The unsaponified portion of the original oil was then extracted from the material with a solvent, leaving the soap. The extracted substance, a fraction of the whole oil, is highly concentrated, the importation containing about 1,500,000 vitamin A units per gram (R. 22–24). The product, as imported, is sold to processors in the United States who use it for medicinal purposes, that is, in vitamin pills and other food supplements for both human beings and animals.

A sample of the imported merchandise was analyzed by a Government chemist, whose report (defendant's exhibit A) reads as follows:

The sample has the characteristics of a concentrated preparation made by saponification of a fish liver oil and purification of the unsaponifiable portion. It consists of Vitamin A alcohols.

In our opinion, it is a vitamin preparation provided for in Par. 5.

Similar merchandise, the subject of Entry No. 488646, same maker, was reported under Laboratory No. D 4868 on April 17, 1958 to Examiner M. M. Young.

The record indicates that the importation at bar is of a stronger potency than some of the fish-liver oil previously imported by the plaintiff (R. 15), it appearing that, prior to 1958, fish-liver oil in less concentrated form (400,000 to 500,000 vitamin units per gram) was classified under paragraph 34 of the tariff act, as modified.

In our present determination, we deem controlling the holding of our appellate court in the case of *Chemical Specialties Co., Inc.* v. *United States*, 43 C.C.P.A. (Customs) 93, C.A.D. 614. The merchandise there involved consisted of a product known as 21-acetoxy pregnenolone, which was classified as a medicinal preparation, artificially obtained and not specially provided for, at the rate of 25 per centum ad valorem under paragraph 5 of the Tariff Act of 1930. The merchandise was claimed properly classifiable chiefly under paragraph 34 of the said act, as modified, as a drug, advanced in condition. The record therein established that the imported 21-acetoxy pregnenolone was produced by a series of chemical steps from a yam, commonly known as "cabeza de negra," and that these steps culminated in the production of 21-hydroxy pregnenolone, which was then acetylated with acetic anhydride, thus forming 21-acetoxy pregnenolone. Our appellate court, pointing out that the imported 21-acetoxy pregnenolone did not exist in the cabeza de negra, but that it was synthesized therefrom by a series of chemical actions, held that the product there imported was compounded rather than "uncompounded" and that, accordingly, it did not come within the meaning of paragraph 34 of the tariff act. The court was further of the opinion that the chemical change involved in the above case was not included within the meaning of "advanced," as it appears in said paragraph 34.

In the case at bar, according to the testimony of plaintiff's own witness Rowley, the chemical process of saponification here employed converts the fatty material of the oil into a soap. This process, in our opinion, results in chemical changes of the starting materials, caustic soda and fish oil, into soap and vitamin A alcohols. Inasmuch as the importation at bar was concentrated and saponified by a series of chemical reactions, the merchandise has been chemically changed or compounded from its natural state. Therefore, it is not uncompounded and does not come within the meaning of a natural drug in paragraph 34. Accordingly, the holding of our appellate court in the *Chemical Specialties* case, *supra*, is determinative of the present issue.

Plaintiff, in contending that the involved merchandise should be classified under paragraph 34 of the tariff act, as modified, *supra*, urges that similar material, also of a high potency, prepared by the saponification method as was the oil in question, had been for approximately 5 years prior to the present importation classified under said paragraph 34.

The court, in the *Chemical Specialties* case, *supra*, held that the fact that other drugs, previously imported, had been classified under paragraph 34 of the act was no basis for classifying a substance thereunder where there has been no showing of long and continued administrative practice and judicial construction relative to the particular substance under consideration. The court therein further noted that, while the appellant in that case had listed a number of drugs, there had been no showing that these drugs were produced

in a manner analogous to the 21-acetoxy pregnenolone there imported. A similar situation exists, in our opinion, in the case at bar, with respect to the production of merchandise claimed similar to the imported material.

Subsequent to the decision in the *Chemical Specialties* case, *supra*, the Treasury Department gave public notice that it would follow the decision of the court in that case (Treasury Decisions, volume 92, T.D. 54487(2), pages 315–316). The said notice was published in the Federal Register of November 22, 1957, volume 22, No. 227, page 9367, and became effective with respect to the classification of drugs derived by chemical reactions and synthesis, which were entered or withdrawn from warehouse for consumption on or after February 20, 1958. In this connection, it may be noted that, prior to publication of the aforesaid notice, interested parties were given an opportunity to make representations respecting the applicability of the decision in the *Chemical Specialties* case, *supra*, to products such as there involved. See Federal Register of June 7, 1957, volume 22, No. 110, page 4034. Also, same volume, No. 129 of July 4, 1957, page 4730. It would, accordingly, appear that all interested parties were given adequate notice of the fact that the customs authorities intended to follow the holding of the court in the *Chemical Specialties* case, *supra*, sufficient to put importers on notice as to the classification of the pertinent merchandise after the date of the decision in that case.

Plaintiff, in the case at bar, as the appealing party, has the twofold burden not only of establishing that the classification made by the collector is incorrect but also of proving his own claim. In our opinion, plaintiff has failed in his burden of proof.

On the basis of the record here presented, we hold the involved merchandise properly classifiable under paragraph 5 of the Tariff Act of 1930, as modified by the Sixth Protocol of Supplementary Concessions to the General Agreement on Tariffs and Trade, T.D. 54108, at the rate of 10½ per centum ad valorem as "medicinal preparations," not specially provided for, as classified.

The protest is overruled. Judgment will be entered accordingly.